UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

OLIVIA GARZA,

      Plaintiff,

      v.

NANCY A. BERRYHILL
(PREVIOUSLY CAROLYN W.
COLVIN),
Acting Commissioner of Social
Security,[1]

      Defendant.

No.  1:16-CV-03082-RHW

**ORDER GRANTING
DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT**

Before the Court are the parties' cross-motions for summary judgment, ECF

Nos. 15 & 20. Plaintiff Olivia Garza brings this action seeking judicial review,

pursuant to 42 U.S.C. § 405(g), of the Commissioner's final decision, which

denied her applications for Disability Insurance Benefits and Supplemental

---

[1] Nancy A. Berryhill became the Acting Commissioner of Social Security on
January 20, 2017. Pursuant to Rule 25(d) of the Federal Rules of Civil
Procedure, Nancy A. Berryhill is substituted for Carolyn W. Colvin as the
defendant in this suit. No further action need be taken to continue this
suit. 42 U.S.C. § 405(g).

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT ~ 1**

Security Income under Titles II & XVI of the Social Security Act, 42 U.S.C §§ 401-434 & 1381-1383F. After reviewing the administrative record and briefs filed by the parties, the Court is now fully informed. For the reasons set forth below, the Court **GRANTS** Defendant's Motion for Summary Judgment.

## I. Jurisdiction

Ms. Garza filed her applications for disability and disability insurance benefits on October 24, 2012. AR 240-52. Her alleged onset date is August 1, 2009. AR 240. Her application was initially denied on December 13, 2012, AR 161-76, and on reconsideration on April 3, 2013, AR 180-92.

Administrative Law Judge ("ALJ") Larry Kennedy held a hearing on September 25, 2014. AR 46-74. On October 24, 2014, the ALJ issued a decision finding Ms. Garza ineligible for disability benefits. AR 19-40. The Appeals Council denied Ms. Garza's request for review on March 31, 2016, AR 1-4, making the ALJ's ruling the "final decision" of the Commissioner.

Ms. Garza timely filed the present action challenging the denial of benefits on May 10, 2016. ECF No. 3. Accordingly, Ms. Garza's claims are properly before this Court pursuant to 42 U.S.C. § 405(g).

## II. Sequential Evaluation Process

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or

mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant shall be determined to be under a disability only if the claimant's impairments are of such severity that the claimant is not only unable to do his previous work, but cannot, considering claimant's age, education, and work experience, engage in any other substantial gainful work that exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A) & 1382c(a)(3)(B).

The Commissioner has established a five-step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Social Security Act. 20 C.F.R. §§ 404.1520(a)(4) & 416.920(a)(4); *Lounsbury v. Barnhart,* 468 F.3d 1111, 1114 (9th Cir. 2006).

Step one inquires whether the claimant is presently engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(b) & 416.920(b). Substantial gainful activity is defined as significant physical or mental activities done or usually done for profit. 20 C.F.R. §§ 404.1572 & 416.972. If the claimant is engaged in substantial activity, he or she is not entitled to disability benefits. 20 C.F.R. §§ 404.1571 & 416.920(b). If not, the ALJ proceeds to step two.

Step two asks whether the claimant has a severe impairment, or combination of impairments, that significantly limits the claimant's physical or mental ability to

do basic work activities.  20 C.F.R. §§ 404.1520(c) & 416.920(c).  A severe

impairment is one that has lasted or is expected to last for at least twelve months,

and must be proven by objective medical evidence.  20 C.F.R. §§ 404.1508-09 &

416.908-09.  If the claimant does not have a severe impairment, or combination of

impairments, the disability claim is denied, and no further evaluative steps are

required.  Otherwise, the evaluation proceeds to the third step.

Step three involves a determination of whether any of the claimant's severe

impairments "meets or equals" one of the listed impairments acknowledged by the

Commissioner to be sufficiently severe as to preclude substantial gainful activity.

20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526 & 416.920(d), 416.925, 416.926;

20 C.F.R. § 404 Subpt. P. App. 1 ("the Listings").  If the impairment meets or

equals one of the listed impairments, the claimant is *per se* disabled and qualifies

for benefits.  *Id.*  If the claimant is not *per se* disabled, the evaluation proceeds to

the fourth step.

Step four examines whether the claimant's residual functional capacity

enables the claimant to perform past relevant work.  20 C.F.R. §§ 404.1520(e)-(f)

& 416.920(e)-(f).  If the claimant can still perform past relevant work, the claimant

is not entitled to disability benefits and the inquiry ends.  *Id.*

Step five shifts the burden to the Commissioner to prove that the claimant is

able to perform other work in the national economy, taking into account the

claimant's age, education, and work experience. *See* 20 C.F.R. §§ 404.1512(f), 404.1520(g), 404.1560(c) & 416.912(f), 416.920(g), 416.960(c). To meet this burden, the Commissioner must establish that (1) the claimant is capable of performing other work; and (2) such work exists in "significant numbers in the national economy." 20 C.F.R. §§ 404.1560(c)(2); 416.960(c)(2); *Beltran v. Astrue,* 676 F.3d 1203, 1206 (9th Cir. 2012).

### III.    Standard of Review

A district court's review of a final decision of the Commissioner is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited, and the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1144, 1158-59 (9th Cir. 2012) (citing § 405(g)). Substantial evidence means "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir.1997) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)) (internal quotation marks omitted). In determining whether the Commissioner's findings are supported by substantial evidence, "a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Robbins v. Soc.*

*Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quoting *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989)).

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the ALJ. *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992). If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012); *see also Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (if the "evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the conclusion must be upheld"). Moreover, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Molina*, 674 F.3d at 1111. An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id.* at 1115. The burden of showing that an error is harmful generally falls upon the party appealing the ALJ's decision. *Shinseki v. Sanders*, 556 U.S. 396, 409–10 (2009).

### IV. Statement of Facts

The facts of the case are set forth in detail in the transcript of proceedings, and accordingly, are only briefly summarized here. Ms. Garza was born in 1991. AR 38. While she does have a high school education, she required special education classes and an additional two years to graduate. ECF No. 15 at 6. She

has very limited prior work experience that does not rise to legal definition of past relevant work. *Id.* Ms. Garza has multiple mental impairments, as well as history of learning disabilities. AR 22.

### V.     The ALJ's Findings

The ALJ determined that Ms. Garza was not under a disability within the meaning of the Act from August 1, 2009, through the date of the decision. AR 19-40.

**At step one**, the ALJ found that Ms. Garza had not engaged in substantial gainful activity since August 1, 2009, her alleged onset date (citing 20 C.F.R. §§ 404.1571 *et seq.* and 416.971 *et seq.*). AR 21.

**At step two**, the ALJ found Ms. Garza had the following severe impairments: borderline intellectual functioning; attention deficit/hyperactivity disorder ("ADHD") versus hyperkinetic disorder; depressive disorder not otherwise specified; intermittent explosive disorder; anxiety disorder not otherwise specified; personality disorder not otherwise specified; and substance use disorder (citing 20 C.F.R. §§ 404.1520(c) and 416.920(c)). AR 22.

At **step three**, the ALJ found that Ms. Garza did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. §§ 404, Subpt. P, App. 1. AR 23-27.

At **step four**, the ALJ found Ms. Garza had the following residual functional capacity: She can perform a full range of work at all exertional levels, but with the following nonexertional limitations: She should avoid concentrated exposure to fumes, odors, gases, dust, or poor ventilation. She can perform simple and routine tasks and can follow short and simple instructions. She can do work that needs little or no judgment and can perform simple duties that can be learned on the job in a short period. She requires a work environment with minimal supervisor contact. She can work in proximity to co-workers but not in a cooperative or team effort. She requires a work environment with no more than superficial interactions with co-workers. She requires a work environment that is predictable and with few work setting changes (i.e. a few routine and uninvolved tasks according to set procedures, sequence, or pace with little opportunity for diversion or interruption). She cannot deal with the general public as in a sales position or where the general public is frequently encountered as an essential element of the work process. Incidental contact of a superficial nature with the general public is not precluded. AR 27-38.

The ALJ determined that Ms. Garza has no past relevant work, so transferability of job skills is not an issue. AR 38.

At **step five**, the ALJ found that in light of her age, education, work experience, and residual functional capacity, there are jobs that exist in significant

numbers in the national economy that Ms. Garza can perform. AR 38-39. These include industrial cleaner, laundry worker, and kitchen helper. *Id.* The ALJ consulted a vocational expert and the Dictionary of Occupational Titles in making this determination. *Id.*

## VI. Issues for Review

Ms. Garza argues that the Commissioner's decision is not free of legal error and not supported by substantial evidence. Specifically, she argues the ALJ erred by: (1) finding that Ms. Garza's borderline intellectual functioning does not meet the severity of Listing 12.05C; (2) failing to properly evaluate the medical opinion evidence; (3) discrediting Ms. Garza's symptom testimony without providing specific, clear, and convincing reasons for so doing. ECF No. 15 at 1.

## VII. Discussion

### A. The ALJ did not err in the finding that Ms. Garza's borderline intellectual functioning does not meet the severity of Listing 12.05C

A claimant will satisfy Listing 12.05C and demonstrate intellectual disability, thus ending the five-step inquiry at step three, if the claimant can show: "(1) subaverage intellectual functioning with deficits in adaptive functioning initially manifested before age 22; (2) a valid IQ score of 60 to 70; and (3) a physical or other mental impairment imposing an additional and significant work-related limitation." *Kennedy v. Colvin*, 738 F.3d 1172, 1174 (9th Cir. 2013). The

ALJ found that Ms. Garza did not meet Listing 12.05C because she did not have deficits in adaptive functioning that initially manifested prior to age 22, nor a valid IQ score of 60 to 70. AR 24-28. Ms. Garza argues this was in error.

**1. Deficits in adaptive functioning**

The ALJ specifically found that there was "no evidence that the claimant has deficits in adaptive functioning." AR 27. The primary reasons for the ALJ's finding were Ms. Garza's ability to graduate high school, no findings of deficits in adaptive functioning during in mental status examinations, and the breadth of Ms. Garza's activities. AR 25-28.

While Ms. Garza did take additional time to graduate from high school and attended special education courses, the record supports the ALJ's findings that her behavioral and mental issues were a significant factor, and not intellectual ability alone. AR 28, 277. Her school records reflect that Ms. Garza did "not have a history of regular school attendance through out [sic] her school career." AR 277. She also had a very significant record of behavioral problems, including weapons, insubordination, violence, and other aggressive conduct. AR 278.

In particular, effort and self-reliance is a theme found throughout Ms. Garza's record. A special education evaluation report from January 2012 observed that Ms. Garza is a "good student, despite his [sic] inattentiveness and off-task behaviors" and that she "has the ability to performed [sic] the tasks asked of her in

class, but that she lacks the effort and independence to complete things and turn them in." AR 309-10. In addition, the report stated that there were no concerns regarding Ms. Garza's adaptive community living skills. AR 311.

The ALJ also referred to multiple normal mental status examinations. Examples in the record include January 2011, (AR 506), February 2011 (AR 545), April 2013 (AR 460-61), and September 2013 (AR 492).

Finally, Ms. Garza's activities do not support deficits in adaptive function. She participated in a summer work program in 2009 unloading shipments at a retail store, and by her own admission, she "did okay" at the job and got along well with others. AR 458. In addition, she babysits periodically and worked for a period as a security guard. AR 489, 660. Ms. Garza has also stated that she has regularly looked for other work, including through an agency. *Id.* Moreover, her socialization skills do not appear limited, as the record and her testimony at the hearing refer to regular time spent with friends. AR 54-55, 61-63, 458, 489. She also has the ability to comfortably socialize in public settings, including a hookah lounge, a fair, concerts, and church. AR 61-63, 461, 595. Finally, Ms. Garza is able to handle household chores and maintain concentration while reading or watching television for at least two hours. AR 461.

//

//

### 2. Valid IQ score between 60 and 70

The record contains multiple instances of psychometric testing, but the ALJ found only the 1999 administration of the Weschler Intelligence Scale for Children-III ("WISC-III") to be reliable. AR 26. The results of the 1999 WISC-III testing found Ms. Garza to have a full scale IQ of 76, performance IQ of 75, and verbal IQ of 81. AR 278. These scores would not meet Listing 12.05C. *See Kennedy*, 738 F.3d at 1174. Both her January 2012 and January 2015 special education evaluation reports indicated that intellectual re-testing was not necessary because Ms. Garza's cognitive levels had not changed since the administration of the WISC-III in 1999 and still fell within the borderline range. AR 278, 310-311.

Dr. Jay M. Toews, EdD, administered the Weschler Adult Intelligence Scale-IV ("WAIS-IV") on December 21, 2010. AR 506-07. At that time, Ms. Garza tested to have a full scale IQ of 68. AR *Id.* Dr. Toews specifically found the test results to be considered valid and further stated in his report that Ms. Garza was "focused, attentive, and calm" during her evaluation and was "serious and motivated for testing." AR 506.

In discrediting these results, the ALJ noted significant discrepancies between various scores, such as a fifteen-point difference between verbal comprehension and perceptional reasoning. AR 26. In his report, however, Dr. Toews stated that

the magnitude of the difference could suggest a cerebral disorder affecting the right hemisphere of the brain. AR 507.

In sum, there is nothing to conclude that this result is invalid. Thus, the Court notes the presence of at least one valid full-scale IQ result in the range of 60-70 and need not address whether the April 2013 results were valid. However, to meet Listing 12.05C, Ms. Garza must demonstrate both a valid IQ score in the 60-70 range *and* deficits in adaptive functioning. *See Kennedy*, 738 F.3d at 1174. For the reasons discussed above, the Court finds no error with the ALJ's conclusion that Ms. Garza has no deficit in adaptive functioning. *See supra* p. 10-12. Thus, the ALJ's error in not crediting the results of the December 2010 WAIS-IV test is harmless error. *See Molina*, 674 F.3d at 1111.

**B. The ALJ did not err in evaluation of the medical record**

**1. Legal Standard**

The Ninth Circuit has distinguished between three classes of medical providers in defining the weight to be given to their opinions: (1) treating providers, those who actually treat the claimant; (2) examining providers, those who examine but do not treat the claimant; and (3) non-examining providers, those who neither treat nor examine the claimant. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996) (as amended).

A treating provider's opinion is given the most weight, followed by an examining provider, and finally a non-examining provider. *Id*. at 830-31. In the absence of a contrary opinion, a treating or examining provider's opinion may not be rejected unless "clear and convincing" reasons are provided. *Id*. at 830. If a treating or examining provider's opinion is contradicted, it may only be discounted for "specific and legitimate reasons that are supported by substantial evidence in the record." *Id*. at 830-31.

The ALJ may meet the specific and legitimate standard by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating [his or her] interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (internal citation omitted). When rejecting a treating provider's opinion on a psychological impairment, the ALJ must offer more than his or her own conclusions and explain why he or she, as opposed to the provider, is correct. *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988).

**2. The opinion of Dr. Toews**

Dr. Toews performed a psychological evaluation on Ms. Garza on January 18, 2011. AR 504-09. During the evaluation, Dr. Toews completed a mental status examination and administered multiple objective tests. AR 506-08. Among his impressions following the evaluation, Dr. Toews opined that Ms. Garza has

"significant cognitive processing deficits" that would limit her ability to adapt to workplace stressors and other challenges and found her to have "severe problems" when dealing with the general public. AR 508.

The ALJ gave Dr. Toews's opinion "some weight." AR 33. The ALJ found that the limitations in social interaction and performance of tasks discussed by Dr. Toews were consistent with the record, but the record also showed that Ms. Garza can adapt to routine stressors adequately and that she can tolerate at least superficial public contact. *Id.*

An ALJ may reject an opinion that is contradicted by a claimant's activities of daily living. *See Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001). The ALJ cited to many of Ms. Garza's activities to demonstrate that she is less limited than Dr. Toews opined. These included her ability to shop independently, attend regular church services and sing in the church choir, participate in competitive dancing, maintain steady friendships, and get along with others at her summer work program. AR 33, 458, 505-06, 595. The record also demonstrates many instances of socialization that were discussed previously in the analysis of Ms. Garza's lack of deficits in adaptive functioning. *See supra* pp. 10-12.

The Court finds the ALJ provided a detailed analysis, citing to specific, clear, and convincing reasons, for rejecting the portion of Dr. Toews's opinion that was not supported by the record.

### 3. The opinion of Dr. Wachsmuth

Dr. Wendi Wachsmuth, PhD, performed a psychological evaluation on Ms. Garza on September 21, 2013. AR 489-92. Dr. Wachsmuth opined that Ms. Garza had marked limitations in five functional areas, including the ability to follow both short, simple and detailed, complex instructions, the ability to perform activities within a schedule, the ability to learn new tasks, and the ability to set goals and plan independently. AR 491. The ALJ gave little weight to Dr. Wachsmuth's opinion because there was no explicit basis for the findings and because the record, including Ms. Garza's statements to Dr. Wachsmuth, are inconsistent with the limitations opined. AR 37.

An ALJ may not discredit a doctor's opinion simply because it is in a check-box format unless the opinion is inconsistent with the underlying medical records. *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014). A check-box will generally be given more weight when it reflects a significant treatment relationship. *See id.* at 1013 (finding that the check-box form was based on significant experience with the claimant and numerous medical records).

Here, there are many factors that support the ALJ's determination. There is no lengthy established treatment history between Ms. Garza and Dr. Wachsmuth. The records strongly suggests this was their only meeting. *See* AR 489-93. Further, the record as a whole does not support Dr. Wachsmuth's assessments, nor do her

own notes. *Id.* Ms. Garza herself stated to Dr. Wachsmuth that she "could probably handle full time work" and that she babysat. AR 489-91. While there were some issues with fidgeting and other symptoms consistent with ADHD, largely the mental status examination yielded benign results. AR 492-93. These facts are inconsistent with the level of impairment opined by Dr. Wachsmuth, and a conflict between a doctor's notes and their subsequent opinion is an adequate reason for discrediting the opinion. *See Ghanim v. Colvin*, 763 F.3d 1154, 1161 (9th Cir. 2014). Additionally, there is no indication in Dr. Wachsmuth's notes that Ms. Garza was taking her prescribed ADHD medication, which Dr. Wachsmuth recognized would strongly benefit her. AR 491. Viewing the record as a whole, with specific attention to Dr. Wachsmuth's report, the Court does not find the ALJ erred.

### 4. The opinion of Dr. Barnard

Dr. Philip G. Barnard, PhD, evaluated Ms. Garza on April 24, 2014. AR 660-664. The only clinical finding provided was that Ms. Garza's ADHD would affect her ability to work on a daily basis to a mild extent. AR 661. Nevertheless, Dr. Barnard opined Ms. Garza would have moderate limitations understanding, remembering, and persisting in detailed tasks; performing within a schedule, including maintaining regular attendance and punctuality; completing a normal

work day and work week; and maintaining appropriate behavior in a work setting. AR 662.

The ALJ actually agreed with some of these limitations, such as those related to detailed instructions and extended public contact in a work setting. AR 37. The ALJ, however, only gave some weight to portions of the opinion, noting that the record overall indicates Ms. Garza can maintain appropriate behavior and persist in simple tasks without interruption. *Id.*

Again, the ALJ took issue with the lack of explanation for the check-box format. Like Dr. Wachsmuth, Dr. Barnard has no established lengthy history with Ms. Garza that would suggest the unsupported check-boxes are especially reliable. *See supra* p. 17; *see also Garrison,* 759 F.3d at 1014. This is particularly relevant for another reason the ALJ gave for giving only partial weight to Dr. Barnard's opinion: Dr. Barnard's lack of familiarity with Ms. Garza's record. AR 37. The ALJ specifically noted that Dr. Barnard was "critically misinformed about [Ms. Garza's] substance abuse." *Id.* The ALJ explained that an opinion that does not account for all relevant information is less reliable. *Id.* at fn.5.

Ms. Garza's statements about her substance use are inconsistent throughout the record, as discussed later in the review of the ALJ's credibility analysis. *See infra* pp. 25. In this instance, she told Dr. Barnard that she has never had a problem with alcohol, nor has she used illicit drugs other than marijuana. AR 660. These

statements are inconsistent with others in the record, most notably her statements on April 7, 2014, that she drinks until she is unable to drink anymore during the weekends and combines "molly" (methylenedioxy-methamphetamine) and alcohol. AR 684. These admissions resulted in a diagnosis of alcohol dependence and a referral to treatment—only *seventeen days* before she met with Dr. Barnard and told him that she had no problem with alcohol. AR 685. Even though the ALJ ultimately found her substance use disorder did not materially affect her ability to perform gainful activity, AR 32, this shows a serious hole in Dr. Barnard's knowledge of his patient. It was not unreasonable for the ALJ to approach the opinion with caution.

In addition, Dr. Barnard's notes largely reflect subjective and biographical information by Ms. Garza, who was properly found to be unreliable. *See infra* at pp. 23-25. The objective information contained within Dr. Barnard's notes is limited to the mental status examination, which does not support all of the limitations opined. ALJ. AR 663-64.

In sum, the Court finds no error in the ALJ's decision to give weight only to the portions of Dr. Barnard's opinion that were consistent with the record and not based upon subjective information.

//

//

**5. The opinion of Dr. Jackson**

Dr. Caryn Jackson, MD, was a treating physician with Yakima Neighborhood Health Services, who provided statements on August 5, 2013, and July 31, 2014, that Ms. Garza's mental health disorder prevented her from engaging in work or school activities. AR 477, 698.

The ALJ gave little weight to these statements, which he correctly described as "cursory." AR 35-36. Dr. Jackson's statements provided no specific findings or explanations to justify the opinion, and she did not even refer to a specific mental health condition. AR 477, 698. An ALJ may reject a treating physician's opinion that is conclusory, brief, and unsupported by the record as a whole or by objective medical findings. *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001). In this case, the opinion is not only conclusory and brief, but also unsupported by objective medical findings or the record as a whole. Further, they provide no relevant information that can be considered to assess the residual functional capacity and ultimate disability determination. *See Meanel v. Apfel*, 172 F.3d 1111, 1114 (9th Cir. 1999) (rejection of conclusory, unsubstantiated opinion in favor of specific findings that were useful in determining disability).

The records from Dr. Jackson do not contain objective findings that support the total limitations opined. For example, while a physical examination was performed in November 2012, there was no specific information about Ms. Garza's

psychological condition other than a comment that Ms. Garza showed "some improvement" after restarting her ADHD medication. AR 422. There were also some statements that appear to be based on subjective information provided by Ms. Garza, who has been established to be unreliable. *See infra* at pp. 23-25. Likewise, at an August 13, 2013, appointment, Dr. Jackson's notes do not demonstrate objective medical findings that support a total bar on work and school activities. AR 604.

Moreover, the record generally does not support Dr. Jackson's August 2013 and July 2014 opinions. Ms. Garza was able to attend and graduate from high school. AR 277-309. While she did attend special education courses and required additional time, she was clearly able to participate in school activities, despite Dr. Jackson's statements to the contrary. Additionally, the record shows instances of work experience, such as babysitting, work as a security guard, and a temporary job in retail. AR 458, 489, 660. These activities are all contrary to Dr. Jackson's total bar on work and school activities, and the ALJ was reasonable to consider them when choosing to discredit the opinion.

### 6. The opinions of Dr. Borton

Dr. Richard Borton, PhD, performed a review of the record for the state on December 11, 2012. AR 116-23. Dr. Borton opined that Ms. Garza would have problems adapting to changes on the job and that she could only adapt to minimal

changes in a "very routine set of job tasks." AR 123. He did also recognize that when taking her medication, her impulse control, the source of her adaptation problems, improved. *Id.*

Dr. Jerry Gardner, PhD, reviewed the record and provided an opinion for the state on April 3, 2013. AR 139-49. His findings were similar to Dr. Borton in that he found Ms. Garza to have low tolerance for stress and limited adaptive coping strategies. *Id.*

As with Dr. Barnard, the ALJ gave some weight to the portions of the opinions that were supported by the record, but he rejected the portions contradicted. AR 35. For example, the ALJ pointed to a special education evaluation performed January 29, 2012. AR 35, 309-14. This evaluation found Ms. Garza to have no concerns regarding adaptive community living skills, and that despite not being medicated for approximately one year, she could still persist with short, concise instructions. AR 309-11.

The record overall demonstrates that Ms. Garza will function best when she takes her ADHD medication, but also that she has some adaptive capability even without her medication. The Court finds no error in the ALJ's explanation for the decision to give less credit to the portion of Drs. Borton and Gardner's opinion that contradicted the special education evaluation and the record generally.

//

**C. The ALJ did not err in the determination of Ms. Garza's credibility.**

An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective symptoms is credible. *Tommasetti,* 533 F.3d at 1039. First, the claimant must produce objective medical evidence of an underlying impairment or impairments that could reasonably be expected to produce some degree of the symptoms alleged. *Id.* Second, if the claimant meets this threshold, and there is no affirmative evidence suggesting malingering, "the ALJ can reject the claimant's testimony about the severity of [his] symptoms only by offering specific, clear, and convincing reasons for doing so." *Id.*

In weighing a claimant's credibility, the ALJ may consider many factors, including, "(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities." *Smolen v. Chater,* 80 F.3d 1273, 1284 (9th Cir. 1996).

The record strongly supports the ALJ's contention that Ms. Garza's conditions can be managed by medication. Unexplained or inadequately explained failure to follow a prescribed course of treatment can be a proper basis for an ALJ to discount a claimant's credibility. *Smolen,* 80 F.3d at 1284. In April 2011, Dr.

Jack Reiter, MD, provided a letter to Ms. Garza which indicated that Ms. Garza herself recognized improvement while on her ADHD medication and that her performance in school and other activities will be "markedly improved." AR 385. Ms. Garza's overall mood and behavior were noticeably worse during evaluations in which she had not been regularly taking her medication. AR 386-90. For instance, her special education evaluators noted that she would lose focus without short, concise instructions, and this was during a period in which she was not taking her medication. AR 309-310. The record is unclear why Ms. Garza sometimes took her ADHD medications and at other times did not, particularly since she herself recognized improvement from it.

In addition, Ms. Garza's activities and work history also do not support her subjective testimony. Ms. Garza has prior experience working in a retail store without problems doing the job or getting along with her co-workers. AR 458. She periodically babysits and had worked as a security guard. AR 489, 660. Her social skills are well-developed, including the ability to socialize comfortably in public settings such as a hookah lounge, a fair, concerts, and church. AR 61-63, 461, 595. She is also able to complete household chores and maintain concentration while reading or watching television for at least two hours. AR 461. All of these activities do not support her allegations, and it was not improper for the ALJ to consider them.

1      Finally, Ms. Garza has exhibited significant inconsistency when discussing

2 her history of drug and alcohol use, which was an important factor to the ALJ's

3 analysis.  Prior inconsistent statements and other testimony that appears less than

4 candid will uphold an ALJ's finding on credibility. *Smolen*, 80 F.3d at 1284.

5 Almost each evaluation contains different information about Ms. Garza's drug and

6 alcohol use. Her medical record of January 11, 2013, noted a history of marijuana

7 use, AR 626, but on April 1, 2013, she denied any history of drug or alcohol use,

8 AR 458. She admitted to drinking heavily at the hookah lounge, but claims to have

9 stopped by her visit on September 6, 2013, with Mark Sikora, LICSW. AR 595.

10 Also in September 2013, she told Dr. Wachsmuth that she "experimented" with

11 marijuana and pills as recently as a couple weeks prior and drinks

12 "occasionally."AR 492. As discussed previously in the analysis of Dr. Barnard's

13 opinion, this is dramatically different from the information provided to Dr. Barnard

14 in April 2014, in which she claims to have never had an alcohol problem or used

15 any drugs other than marijuana. AR 660; *See also supra* at p.19. In sum, Ms.

16 Garza's own statements about her drug and alcohol abuse have changed with each

17 evaluation, and the significant inconsistency between her statements, particularly

18 within short time frames, constitute valid reasons for the ALJ to have rejected her

19 credibility.

20 *//*

# VIII. Conclusion

Having reviewed the record and the ALJ's findings, the Court finds the ALJ's decision is supported by substantial evidence and free from legal error. Accordingly, **IT IS ORDERED:**

1. Plaintiff's Motion for Summary Judgment, **ECF No. 15**, is **DENIED.**

2. Defendant's Motion for Summary Judgment, **ECF No. 20,** is **GRANTED.**

3. The District Court Executive is directed to enter judgment in favor of Defendant and against Plaintiff.

**IT IS SO ORDERED.** The District Court Executive is directed to enter this Order, forward copies to counsel and **close the file**.

**DATED** this 1st day of June, 2017.

_s/Robert H. Whaley_
ROBERT H. WHALEY
Senior United States District Judge